IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CRAGE CULVER, ) | Civil Action No. 4:07-00161-RBH-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | REPORT AND RECOMMENDATION |
| ALVIN S. GLENN DETENTION CENTER; ) | |
| OFFICER ROBENSON; SERGEANT BUFFORD; ) | |
| AND DOCTOR MORRIS, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I. PROCEDURAL BACKGROUND

The plaintiff, Crage Culver, filed this action under 42 U.S.C. § 1983[1] on January 18, 2007, alleging violations of his constitutional rights. During the time of the matters alleged in his complaint, plaintiff was housed at the Alvin S. Glenn Detention Center (ASGDC) as a pretrial detainee.[2] Defendant Doctor Blake Moore[3] filed a motion for summary judgment on October 11, 2007, along with a memorandum and exhibits in support of said motion. (Document #50). Because plaintiff is proceeding pro se, he was advised on or about October 11, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendant's motion for summary judgment could result in the dismissal of his complaint. On October 11, 2007, defendants

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

[2] The ASGDC was dismissed as a party defendant by Order of this Court on May 16, 2007. (See document #10).

[3] Dr. Moore asserts that he was improperly named by plaintiff as Doc Morris. He will be addressed as Dr. Moore in this report and recommendation.

Robenson and Bufford filed a motion for summary judgment along with a memorandum, exhibits, and affidavits in support of said motion. Because plaintiff is proceeding pro se, he was advised on or about October 12, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in the dismissal of his complaint. The plaintiff filed a response to the motions for summary judgment on October 31, 2007, (document # 57).

## II. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges indifference to his medical needs while a pretrial detainee at the ASGDC. Plaintiff asserts that defendants did not provide prompt medical treatment to him after his face became swollen and he began having chest pains. In his complaint, plaintiff complains that he was refused medical treatment from December 24, 2006, at 8:30 a.m. until he was seen by Medical on December 25, 2006 at 1:30 a.m. (Complaint at 3-4.) Plaintiff states that he was seen by the doctor on January 3, 2007, after the intervention of his public defender. (Complaint at 4.) Plaintiff asserts that Doctor Moore told him that he has an abnormal heartbeat and high blood pressure. (Complaint). Plaintiff alleges a violation of his constitutional rights in that his medical treatment, or lack thereof, was cruel and unusual punishment.

### B. STANDARD FOR SUMMARY JUDGMENT

As previously stated, defendant Dr. Moore and defendants Robenson and Bufford filed motions for summary judgment.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to

2

fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C. LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process

3

clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v.

4

Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986).  Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

### D.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendant Dr. Moore and defendants Robenson and Bufford have pleaded the affirmative defense of failure to comply with the PLRA's exhaustion requirement and has moved for summary judgment on that basis as well as on the merits of the allegations. Defendants submitted the affidavit of Kathryn Harrell who attests that she is employed as the Assistant Director of the ASGDC and is in charge of overseeing the daily operations of the ASGDC. Harrell attests that she reviewed plaintiff's inmate and medical records maintained at the ASGDC in the ordinary course of business and attached a copy of said records to her affidavit. A review of these records reveal that plaintiff filed grievances related to the specific allegations in this complaint but has not appealed any of the grievances as required to do per ASGDC policy. (See Harrell's affidavit, document #52-4).

Plaintiff filed a response to the motions for summary judgment but did not respond to the argument that he had failed to exhaust administrative remedies.[4]

---

[4] On July 27, 2007, plaintiff filed a document entitled "Petition and Motion for Injunction." In this document, plaintiff states as follows, quoted verbatim:
> Pursuant to the nurse come at any time. Here A.S.G.D.C. there is no set time nor is any memorandum of availability to detainee's. The plaintiff herein motion for an injunction for the production of the result of the grievance the defendants Robenson & Sergeant Bufford read on or about 12-24-06. The consequently to stop

5

The Prison Litigation Reform Act ("PLRA") requires that a prisoner[5] exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C. 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit.  The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a).  Accordingly, before plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the SCDC grievance process.  The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001);  see Porter v. Nussle, 534 U.S. 516 (2002);  Jones v. Smith, 266 F.3d 399 (6th Cir. 2001)(exhaustion required even though plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir.  2001)(exhaustion required even though plaintiff claimed he was afraid); see also

---

      defendants from their continued  nonresponse to grievance. Over
      more or to punulize this facility for having an grievance procedure
      in name only. (Sic) (Document # 22).
This motion for preliminary injunction was dismissed by Order of this Court dated October 22, 2007, as Moot in that plaintiff was transferred from the ASGDC. Plaintiff filed a notice of change of address with the court on August 14, 2007. (Document #27). Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition complained of. Williams v. Griffin, 952 F.2d 820, 825 (4th Cir. 1991); Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983). (See Document # 55).

[5] A "prisoner", is defined to mean, "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law." § 1997e(h). Thus, exhaustion of administrative remedies is also required of pretrial detainees such as the plaintiff here.

Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001)(unpublished opinion)(applying Booth v. Churner to affirm district court's denial of relief to plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006).

Based on the evidence presented, it is recommended that defendant Dr. Moore's (document #50) and defendants Robenson and Bufford's (document #52) motions for summary judgment be granted for failure to exhaust administrative remedies.[6]

In the alternative, the undersigned will briefly discuss the merits of plaintiff's claim.

### E. MEDICAL INDIFFERENCE

As previously stated, plaintiff alleges that while a pretrial detainee at ASGDC he was denied prompt medical care after suffering with his face swelling and chest pains.

Defendant Dr. Moore and defendants Robenson and Bufford filed their motion for summary judgment asserting that plaintiff received adequate care while a pretrial detainee at the ASGDC and that plaintiff has failed to allege or provide any evidence that any lingering injury is attributable to

---

[6] In the alternative, it is recommended that this complaint be dismissed in that plaintiff has failed to request any relief or suggest to this Court any remedy for the alleged violation. In *North Carolina v. Rice*, 404 U.S. 244 (1971), the United States Supreme Court stated that a case in federal court "must be a real and substantial controversy admitting of specific relief . . . ." *Id.* at 246 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). For this Court to find plaintiff's rights have been violated but order no remedy would, in effect, be rendering an advisory opinion. Such action is barred by Article III of the Constitution. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). *See also Norvell v. Sangre de Cristo Dev. Co.*, 519 F.2d 370, 375 (10th Cir. 1975) (federal courts do not render advisory opinions).

the alleged delay.

In the case of <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," <u>Id</u>., quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169-73 (1976).  The Court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," <u>Gregg v. Georgia</u>, supra, at 173, (joint opinion), proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

<u>Estelle</u>, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

<u>Estelle</u>, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of

Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the Court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct.").

9

Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal). Thus, even if the plaintiff were able to show that defendants' actions somehow constituted medical negligence or medical malpractice, these are not actionable under 42 U.S.C. § 1983.

"Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

In the present case, the plaintiff's allegations are brought against defendant Dr. Moore and defendants Robenson and Bufford for medical indifference for failing to give him prompt medical attention after complaining of chest pains.

A review of plaintiff's medical records reveals that plaintiff was seen by medical and dental several times during his stay at the ASGDC. On December 19, 2006, because of a positive reading for the presence of the tuberculosis organism or antibodies within the body, plaintiff received a chest x-ray which was normal with no acute cardiopulmonary findings. (Docket entry 350-2, p. 21). Plaintiff was seen by the dentist on December 21, and 28, 2006, and again on January 2, 2007 complaining of tooth aches resulting in teeth being extracted.

On December 24, 2006, it is noted in the medical records provided that plaintiff complained of chest pain and a swollen mouth and was seen at 11:30 p.m. by a nurse after another nurse had requested that he be seen. It was noted that plaintiff walked to medical with no problem, was alert and oriented, and that there was swelling of the side of his mouth due to an abscessed tooth. It was also noted that his blood pressure was 130/90, his pulse rate was 64. However, an EKG was ordered, and he was referred to the dentist for a tooth abscess. (Docket entry #50-2, p. 24). He was seen by medical again on January 3, 2007, where he was assessed and an electrocardiogram (EKG) was performed. Further, plaintiff admitted in his complaint that medical came around within at least twenty-four hours of his request for medical care and he was seen by the doctor on January 3, 2007. Thus, although plaintiff did not agree with the type of treatment or the timing of treatment he received, the fact is plaintiff was provided treatment. As previously stated, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. Negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. Negligence, in general, is

11

not actionable under 42 U.S.C. § 1983. If this claim could be construed as asserting medical malpractice, it must also fail. Medical malpractice is not actionable under 42 U.S.C. § 1983. *See* Estelle v. Gamble, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). In addition, plaintiff has failed to identify any medical expert or provide expert testimony regarding the standard of care, defendants' failure to conform to the standard, or the issue of proximate cause.

Based on the evidence, there has been no deliberate indifference shown to the overall medical needs of the plaintiff. A review of plaintiff's medical records submitted by defendant Dr. Moore reveals plaintiff received examinations and medication. The plaintiff has not provided any medical evidence or filed any affidavits that indicate any lack of prompt treatment caused him to suffer any life threatening medical problems. To survive summary judgment, the plaintiff must show more than de minimis pain or injury. Plaintiff has failed to meet this burden. Accordingly, plaintiff's claims of medical indifference, if any, must fail as a matter of law. Thus, the undersigned recommends that the motions for summary judgment filed by defendants Moore, Robenson and Bufford be granted as it relates to the plaintiff's claims of medical indifference.

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any detainee, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra. As previously discussed, the Supreme Court noted that the administration of detention facilities is a complex task, with numerous administrative goals, including, among other

things, the maintenance of order and discipline within the facility and the prevention of escapes. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

## F.  QUALIFIED IMMUNITY

Defendants Robenson and Bufford argue in their motion for summary judgment that even if plaintiff were able to established a claim and had exhausted his administrative remedies, they would still be entitled to qualified immunity. Defendants argue that given the fact that the administrators at the ASGDC have provided for expert medical providers for the inmate population, the fact that the plaintiff was receiving substantial amounts of appropriate medical care, and that there was less than a 24 hour delay from the time the plaintiff allegedly complained of medical concerns and was treated, these defendants did not violate a clearly established constitutional right of the plaintiff's.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity.  Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a

valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity

in their individual capacity. Thus, the undersigned recommends that the defendants' motion for summary judgment be granted on this issue.

### G.  PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### III.  CONCLUSION

Based on the above reasoning, it is RECOMMENDED that Defendant Moore's motion for summary judgment (document #50) and defendants Robenson and Bufford's motion for summary judgment (document #52) be GRANTED and this claim dismissed.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

July 9, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**